UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EVA MAGALLANES,<br><br>                    Plaintiff,<br><br>       v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security<br>Administration,<br><br>                    Defendant. | NO: 1:14-CV-3078-TOR<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 18, 19). Plaintiff is represented by D. James Tree. Defendant is represented by Jordan D. Goddard. This matter was submitted for consideration without oral argument. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the Court grants Defendant's motion and denies Plaintiff's motion.

//

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1117 (internal quotation marks and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

1   416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

2   Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

3   404.1520(b); 416.920(b).

4          If the claimant is not engaged in substantial gainful activities, the analysis

5   proceeds to step two.  At this step, the Commissioner considers the severity of the

6   claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

7   claimant suffers from "any impairment or combination of impairments which

8   significantly limits [his or her] physical or mental ability to do basic work

9   activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

10  416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

11  however, the Commissioner must find that the claimant is not disabled.  *Id.*

12         At step three, the Commissioner compares the claimant's impairment to

13  several impairments recognized by the Commissioner to be so severe as to

14  preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§

15  404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more

16  severe than one of the enumerated impairments, the Commissioner must find the

17  claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

18         If the severity of the claimant's impairment does meet or exceed the severity

19  of the enumerated impairments, the Commissioner must pause to assess the

20  claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work").  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

1    The claimant bears the burden of proof at steps one through four above.

2    *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  If

3    the analysis proceeds to step five, the burden shifts to the Commissioner to

4    establish that (1) the claimant is capable of performing other work; and (2) such

5    work "exists in significant numbers in the national economy."  20 C.F.R. §§

6    404.1560(c); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

7                                          **ALJ'S FINDINGS**

8    Plaintiff protectively filed applications for disability insurance benefits and

9    supplemental security income on July 26, 2010, alleging a disability onset date of

10   March 30, 2010, in both applications.  Tr. 137, 271-72, 273-74, 275-78.  These

11   applications were denied initially and upon reconsideration, and Plaintiff requested

12   a hearing.  Tr. 200-08, 209-17, 219-23, 224-25.  A video hearing was held with an

13   Administrative Law Judge ("ALJ") on August 8, 2012.  Tr. 80-117.  The ALJ

14   rendered a decision denying Plaintiff benefits on November 20, 2012.  Tr. 17-37.

15   The ALJ found that Plaintiff met the insured status requirements of Title II

16   of the Social Security Act through December 31, 2011.  Tr. 22.  At step one, the

17   ALJ found that Plaintiff had not engaged in substantial gainful activity since

18   March 30, 2010, the alleged onset date.  Tr. 22.  At step two, the ALJ found that

19   Plaintiff had the following severe impairments: osteoarthritis of the knees,

20   degenerative disc disease of the lumbar spine, major depressive disorder, post-

traumatic stress disorder, unspecified personality disorder, and obesity.  Tr. 22.   At

step three, the ALJ found that Plaintiff did not have an impairment or combination

of impairments that meet or medically equal a listed impairment.  Tr. 24.  The ALJ

then determined that Plaintiff had the RFC

> to perform less than the full range of light work as defined in 20 CFR
> 404.1567(b) and 416.967(b). The claimant can lift or carry no more
> than 20 pounds occasionally and 10 pounds frequently and she has the
> ability to stand or walk for 6 hours in an 8 hour day. The claimant is
> limited to work that provides a sit/stand option that would allow the
> individual to sit or stand alternatively; frequently push or pull; and
> frequently operate foot controls. The claimant is limited to work
> where she never climbs ladders, ropes, or scaffolds. The claimant is
> limited to occasional stooping, kneeling, crouching, and crawling. The
> claimant should avoid concentrated exposure to workplace hazards
> such as dangerous machinery and unprotected heights. The claimant's
> work is limited to simple routine tasks, involving only simple work
> related decisions, with few workplace changes.

Tr. 26.  At step four, the ALJ found that Plaintiff was unable to perform any past

relevant work.  Tr. 30.  At step five, the ALJ found that Plaintiff could perform the

representative occupations of parking lot attendant, office helper, and outside

deliverer.  Tr. 31.  The ALJ also noted, in light to the vocational expert's testimony

at the hearing, that even if Plaintiff was limited to a sedentary exertional level,

there are jobs that exist in significant numbers in the economy, including cashier II

(seated position) and call out operator.  Tr. 31.  In light of her step five findings,

the ALJ concluded that Plaintiff was not disabled under the Social Security Act

and denied her claims on that basis.  Tr. 31.

The Appeals Council denied Plaintiff's request for review on April 10, 2014, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  Tr. 1-6; 20 C.F.R. §§ 404.981, 416.1484, and 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability benefits and supplemental security income under Titles II and XVI of the Social Security Act.  Plaintiff raises the following three issues for review:

1. Whether the ALJ properly discounted Plaintiff's credibility;

2. Whether the ALJ properly accounted for the opinion of Dr. Edward Beaty; and

3. Whether the ALJ's RFC assessment incorporated the full extent of Plaintiff's limitations.

ECF No. 18 at 7-20.  This Court addresses each issue in turn.

## DISCUSSION

### A.    Adverse Credibility Finding

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina*, 674 F.3d at 1112 (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  First, the ALJ must determine whether the claimant has proved the existence of a physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings."  20 C.F.R. §§ 416.908, 416.927; *see*

*Molina*, 674 F.3d at 1112.  A claimant's statements about his or her symptoms

alone will not suffice.  20 C.F.R. §§ 416.908, 416.927.  "Once the claimant

produces medical evidence of an underlying impairment, the Commissioner may

not discredit the claimant's testimony as to subjective symptoms merely because

they are unsupported by objective evidence."  *Berry v. Astrue*, 622 F.3d 1228,

1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995));

*Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).  As long as the

impairment "could reasonably be expected to produce the pain or other

symptoms," the claimant may offer a subjective evaluation as to the severity of the

impairment.  *Bunnell*, 947 F.2d at 345-56.  This rule recognizes that the severity of

a claimant's symptoms "cannot be objectively verified or measured."  *Id.* at 347

(citation omitted).

However, an ALJ may conclude that the claimant's subjective assessment is

unreliable, so long as the ALJ makes "a credibility determination with findings

sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not

arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958

(9th Cir. 2002); *see also Bunnell*, 947 F.2d at 345 ("[A]lthough an adjudicator may

find the claimant's allegations of severity to be not credible, the adjudicator must

specifically make findings which support this conclusion.").  If there is no

evidence of malingering, the ALJ's reasons for discrediting the claimant's

testimony must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted).  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *see Berry*, 622 F.3d at 1234 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

In weighing the claimant's credibility, the ALJ may consider many factors, including "'(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.'" *Chaudry*, 688 F.3d at 672 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)).  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing. *Id.* (quoting *Tommasetti*, 533 F.3d at 1039).

Here, the ALJ found that the Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, . . . the [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not completely credible." Tr. 27.  Because

there is no evidence of malingering in this case, the Court must determine whether

the ALJ provided specific, clear, and convincing reasons not to credit Plaintiff's

testimony regarding the limiting effect of her symptoms. *Chaudhry*, 688 F.3d at

672.

Although Plaintiff contends that the ALJ improperly conducted an adverse

credibility analysis, ECF No. 18 at 13-22, this Court disagrees. The ALJ provided

the following specific, clear, and convincing reasoning supported by substantial

evidence for finding Plaintiff's subjective statements not fully credible: the ALJ

found that (1) the medical evidence did not support the degree of physical and

mental limitation alleged by Plaintiff; (2) Plaintiff's presentation at physical and

mental exams was inconsistent with her reported limitations; and (3) Plaintiff "may

have narcotic seeking behaviors and that the claimant's level of impairments do

not warrant the type and amount of pain medication that she alleged she needs."

Tr. 27-28.

First, the ALJ found the medical evidence did not support the degree of

physical limitation alleged by Plaintiff. For instance, although Plaintiff testified to

a lot of pain in her knees and back, problems with stairs and walking, need for a

cane, inability to squat, bend, or stand for more than 20 minutes, and ability to lift

only 15 pounds, the ALJ highlighted the following contradictory medical evidence:

> X-rays of the knees showed that joint space was maintained, and no
> osteophytosis or acute bony defect or fracture was noted. MRI's of the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

claimant's back showed a few mildly bulging discs in the lumbar
spine. An orthopedist, Dr. Pierson, noted that the claimant ambulated
without the use of a cane or crutch, had no tenderness to palpation
over the knees, and had a negative McMurray test. The claimant was
found to have no lumbar spine tenderness, a normal range of motion,
and normal curvature. Strength was noted to be 5/5. The claimant's
patellar and ankle jerk reflexes were 1+ and equal bilaterally. The
claimant had an active range of motion in the knees from 0 to 120
degrees of flexion. A neurological examiner noted that the claimant
did not have any reflex, sensory, or motor changes that would suggest
a radiculopathy, and did not find any evidence for myelopathy. Dr.
Kraus noted that for almost all of the claimant's strength testing, she
needed a lot of coaching to give good effort, hut that overall, he could
not find any weakness. Dr. Kraus noted that he was unable to find any
neurological abnormality or cause for the claimant's pain symptoms.

Tr. 27 (citations omitted). These inconsistencies between the Plaintiff's alleged

limitations and physical medical evidence provided a permissible reason for

discounting Plaintiff's credibility. *Thomas*, 278 F.3d at 958; see also *Rollins v.*

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony

cannot be rejected on the sole ground that it is not fully corroborated by objective

medical evidence, the medical evidence is still a relevant factor in determining the

severity of the claimant's pain and its disabling effects.").

　　　　Second, the ALJ found inconsistencies between Plaintiff's reports of

significant limitations and her presentation at both physical and mental exams. As

noted by the ALJ, "[t]he claimant is described by providers as alert and oriented,

with appropriate mood and affect," she "presents [herself] as appropriately dressed

and groomed," and "has been noted to have normal attention span and

concentration." Tr. 27-28. Because the ALJ may employ "ordinary techniques of credibility evaluation" when assessing the Plaintiff's credibility, *Thomas*, 278 F.3d at 960, the ALJ provided another permissible reason for not fully crediting Plaintiff's testimony.

Finally, the ALJ cited to Plaintiff's possible narcotic seeking behavior as another reason to not fully credit Plaintiff's subjective statements of pain. As stated by Plaintiff at one medical visit, her prior treating physician, Dr. Rosa Martinez, would not provide pain medication because that Dr. Martinez was "concerned about getting sued over prescribing narcotics." Tr. 28, 668. In another visit, with Dr. Phillip Dove, the physician noted that Plaintiff "quickly redirected the conversation to her pain medication and the need for methadone and narcotics" and that when he tried to redirect her to a conversation of a diagnosis and her records from an orthopedist "she became very agitat[ed], aggressive[,] refused to release records or leave blood," "became insulting about why" he was asking so many questions, and she ultimately "left very angry storming out." Tr. 28, 654-55. When Plaintiff had a subsequent visit with Ms. Jessica Wynn, ARNP, Plaintiff told Ms. Wynn that the appointment with Dr. Dove had not went well and that she did not understand why no one would prescribe her medicine. Tr. 28, 648. In light of Plaintiff's "unremarkable" physical exams, the ALJ reasonably questioned whether the amount of medication Plaintiff alleged she needed was consistent with the level

of impairment or instead evidenced narcotic seeking behavior.  This was a specific,

clear, and convincing reason to discount Plaintiff's testimony regarding her alleged

limitations.  *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001)

(recognizing narcotic seeking behavior as a permissible reason for an ALJ to not

fully credit a claimant's alleged limitations).

Plaintiff reasonably faults the ALJ for discounting her mental health

statements based on evidence in the record showing improvement.  ECF No. 17-

19.  As noted by Plaintiff, the ALJ's examples of improvement appear to have

been "cherry-picked" periods of temporary well-being rather than constituting

examples of "broader development," *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th

Cir. 2014):

> [I]t is error to reject a claimant's testimony merely because symptoms
> wax and wane in the course of treatment. Cycles of improvement and
> debilitating symptoms are a common occurrence, and in such
> circumstances it is error for an ALJ to pick out a few isolated
> instances of improvement over a period of months or years and to
> treat them as a basis for concluding a claimant is capable of working.
> Reports of "improvement" in the context of mental health issues must
> be interpreted with an understanding of the patient's overall well-
> being and the nature of her symptoms.

*Id.* at 1017 (citations omitted).  For instance, specific to Plaintiff's reports of

depression, the ALJ noted the following:

> As to claimant's mental symptoms, there are numerous reports in the
> record of the claimant presenting as teary and emotional during
> medical appointments. However, medical evidence shows that the
> claimant reported that her mood was "better" after her medication was

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

> adjusted in April 2011, and that she felt good and happy. One of the claimant's treating providers, Sandra Carollo, ARNP, noted that the claimant was presenting better than at previous appointments; the claimant's mood was less labile, and she was not as teary.

Tr. 27 (citations omitted).  As noted by Plaintiff, however, Plaintiff had numerous appointments following April 2011 in which her reports of mental health waxed and waned.  ECF No. 18 at 17-18 (citing Tr. 696, 699, 700, 704, 708-09). Nevertheless, the ALJ provided other specific, clear, and convincing reasons based on substantial evidence for not fully crediting Plaintiff's testimony, as detailed above.  *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (discussing application of the harmless error analysis, including where "the ALJ provided numerous other record-supported reasons for discrediting the claimant's testimony").  Further, any error here is inconsequential to the ALJ's ultimate nondisability finding, *see id.*, which considered evidence in the record regarding Plaintiff's non-exertional limitations and ultimately determined such limitations would only have "intermittent" effects on Plaintiff's ability to work. *See* Tr. 29 (discussing Dr. Beaty's and Dr. Doughtery's opinions regarding Plaintiff's mental limitations, as well as rejecting the validity of Plaintiff's GAF assessment).  Thus, any error was harmless.

## B.   Dr. Beaty's Medical Opinion

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan*, 246 F.3d at 1201-02 (citations omitted).  Generally, the opinion of a treating physician carries more weight than the opinion of an examining physician, and the opinion of an examining physician carries more weight than the opinion of a reviewing physician.  *Id.*  In addition, the Commissioner's regulations give more weight to opinions that are explained than to opinions that are not, and to the opinions of specialists on matters relating to their area of expertise over the opinions of non-specialists.  *Id.* (citations omitted).

Plaintiff contends that the ALJ did not properly weigh the findings of Dr. Beaty, a state agency doctor who reviewed Plaintiff's file.  Specifically, Plaintiff points to the following limitations as stated in Dr. Beaty's report: Plaintiff is "moderately limited" in her ability to (1) carry out detailed instructions, (2) maintain attention and concentration for extended periods, and (3) complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  ECF No. 18 at 8 (citing Tr. 194).  Plaintiff further contends that the ALJ improperly ignored the testimony of the vocational expert, who in considering Dr. Beaty's opinions, concluded that Plaintiff would not be able to sustain work.  *Id.* at 11.

1      The ALJ afforded Dr. Beaty's assessment "significant weight."  Tr. 29.  As

2 the ALJ found, "[w]hile the claimant's subjective experience of pain and

3 depression may cause some intermittent difficulties, the claimant has the

4 concentration, persistence, and pace for a normal workday."  Tr. 29.  This Court

5 does not find error in the ALJ's assessment of Dr. Beaty's findings: Dr. Beaty

6 never opined that Plaintiff was unable to complete a normal workday, only that she

7 would have moderate difficulties in so doing.  Quite the opposite, Dr. Beaty

8 specifically stated that Plaintiff "is capable of independent self-care, maintaining

9 adequate attention and CPP [concentration, persistence and pace] for a normal

10 workday, and capable of simple routine tasks."  Tr. 190.  The ALJ was not required

11 to rely on the vocational expert's contrary view, over that of Dr. Beaty and the

12 other evidence in the record.  Rather, ALJ properly acknowledged these

13 limitations, and, in giving Dr. Beaty's opinion significant weight, similarly found

14 Plaintiff was capable of completing a normal workday.  Accordingly, this Court

15 does not find error.

16     **C.    RFC Assessment**

17      The RFC is "the most [a claimant] can still do despite [her] limitations."  20

18 C.F.R § 404.1545(a)(1), 416.945(a)(1).  In making this finding, the ALJ need only

19 include credible limitations supported by substantial evidence.  *Batson v. Comm'r*

20 *of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

1   Plaintiff contends the following limitations were inappropriately excluded

2   from the ALJ's RFC finding: (1) Plaintiff is capable of less than full-time

3   sedentary work and cannot stand for very long; (2) Plaintiff requires a job that

4   allows her to sit or stand or will, not simply the option to do either; (3) Plaintiff can

5   only have limited contact with the public because of major depressive disorder,

6   personality disorder, and post-traumatic stress disorder; and (4) Plaintiff's

7   obesity's limiting effects. ECF No. 18 at 22-30.

8   First, Plaintiff faults the ALJ's RFC as indicating Plaintiff is capable of

9   standing for six out of eight hours despite Dr. Howard Platter's opinion that

10  Plaintiff should be restricted to sedentary work.  However, the ALJ properly

11  rejected the opinion of Dr. Platter, a non-examining physician, by reference to

12  specific evidence in the medical record.  *Sousa v. Callahan*, 143 F.3d 1240, 1244

13  (9th Cir. 1998).  Affording Dr. Platter's opinion "no weight," the ALJ noted that

14  Plaintiff's "clinical examinations have been largely unremarkable and do not

15  support a sedentary residual functional capacity."  Tr. 28.  Rather the ALJ afforded

16  greater weight to an examining orthopedist, Dr. Pierson, who noted that Plaintiff

17  ambulated without the use of a cane or crutch, had no tenderness to palpation over

18  the knees, and had a negative McMurray test.  Tr. 29 (citing Tr. 633).  Further, any

19  error in not incorporating Dr. Platter's sedentary limitation into the RFC is

20  harmless considering the ALJ found the following in her step five analysis:

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

Based on the vocational expert's testimony at the hearing, the undersigned notes that even if the claimant was limited to a sedentary exertional level, there are jobs that exist in significant numbers in the economy. The vocational expert testified that such an individual would be able to perform cashier II (DOT 211.462-010, light, SVP 2). Although this job is classified as light, the vocational expert identified a subset of this job which allowed a seated position, and indicated that this subset would have 2,400 jobs in Washington State, and 115,000 jobs nationwide. The vocational expert testified that such an individual could also perform the job of call out operator (DOT 237.367-014, sedentary, SVP 2), with 700 jobs in Washington State, and 50,000 jobs nationwide.

Tr. 31; *see Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("[T]o the extent the ALJ's RFC finding erroneously omitted Stubbs-Danielson's postural limitations (only occasional balancing, stooping, and climbing of ramps and stairs), any error was harmless since sedentary jobs require infrequent stooping, balancing, crouching, or climbing.")

Second, Plaintiff faults the ALJ's RFC assessment for only limiting her to work that allows Plaintiff to sit or stand alternatively, rather than at will. ECF No. 18 at 25-26.  Plaintiff cites to her problems with standing and the need to take frequent breaks in support or this contention.  Based on the vocational expert's testimony, Plaintiff contends there are not jobs in the national economy that would accommodate such an at-will sit/stand limitation.  *Id.* at 26.  Plaintiff's argument, however, is without merit.  As stated above, the ALJ properly rejected Plaintiff's self-reported standing limitations.  Further, the ALJ's step five assessment noted

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

that there were significant jobs in the national and state economy that would account for Plaintiff's alleged sedentary limitation. Thus, any error in not including this standing limitation in the RFC was harmless. *See Stubbs-Danielson*, 539 F.3d at 1174.

Third, Plaintiff contends the RFC does not account for her non-exertional limitations, including her limited tolerance with the public because of major depressive disorder, personality disorder, and post-traumatic stress disorder. ECF No. 18 at 26-28. In support, Plaintiff cites to Dr. Beaty's finding that Plaintiff has moderate limitations in social interaction, which opinion the ALJ rejected. *Id.* at 26-27. However, the ALJ noted specific evidence in the record that contradicted this non-treating, non-examining medical opinion:

> The undersigned gives little weight to Dr. Beaty's opinion regarding moderate difficulties in social functioning as it is inconsistent with evidence in the record which shows that the claimant enjoys reading to her grandson and talking on the telephone to relatives 3 times per week. The claimant reported that she does not have any problems getting along with family, friends, neighbors, or others.

Tr. 29 (citations omitted). Further, the ALJ afforded significant weight to Dr. Roland Dougherty, Ph.D., a consultative psychological examiner, who found that Plaintiff's social skills appeared fair. Accordingly, because ALJ properly rejected this opinion of Dr. Beaty, she need not have incorporated this discredited opinion into her RFC finding. *See Batson*, 359 F.3d at 1197.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

Finally, Plaintiff faults the ALJ for not incorporating the limiting effects of her obesity into the RFC finding. ECF No. 18 at 28-30.  Plaintiff reported that her feet get swollen if she has to walk or stand too long, which in turn requires her to rest her feet to allow recovery.  *Id.* at 29.  Again, any error in not including Plaintiff's reported limitations, which the ALJ already discounted as detailed above, was harmless considering her step five finding regarding sedentary jobs. *See Stubbs-Danielson*, 539 F.3d at 1174.

Accordingly, because the ALJ's RFC finding is supported by substantial evidence in the record and need not have included discounted limitations, no error has been shown.

**IT IS ORDERED:**

    1.  Plaintiff's Motion for Summary Judgment (ECF No. 18) is **DENIED**.

    2.  Defendant's Motion for Summary Judgment (ECF No. 19) is

       **GRANTED**.

The District Court Executive is directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** the file.

**DATED** May 19, 2015.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21